## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

M.C.H.L.,

             Petitioner,

v.

DAVE ROBERSON, et al.,

             Respondents.

CIVIL ACTION FILE NUMBER:

4:25-cv-00329-WMR

## **ORDER**

This matter is before the Court on Petitioner M.C.H.L's Petition for Writ of Habeas Corpus. [Doc. 1]. Having reviewed the record and the Parties' briefing, the Court enters the following Order.

### I.    BACKGROUND

Petitioner is a 30-year-old citizen of Mexico. [Doc. 1 ¶ 21]. She entered the United States on August 3, 2023, seeking asylum. [*Id*.]. Upon her arrival to the country, she was granted an Order of Release on Recognizance ("OREC") after passing a credible fear interview. [*Id*.]. She was then permitted to remain in the United States without posting bond. [*Id*.]. Her asylum application is still pending,[1]

---

[1]On December 11, 2025, the Court ordered both parties to address whether Petitioner's pending asylum application affected the Court's analysis of the Petition. [Doc. 19]. Both parties filed their

but her OREC prohibited Petitioner from "violat[ing] any local, State, or Federal laws or Ordinances." [Doc. 12 at 6].

After being stopped for a traffic violation, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") on November 8, 2025. [Doc. 1 ¶ 21]. She was originally detained at the Floyd County Detention Center in Rome, Georgia. [*Id*.]. She was then transferred to ICE custody on November 10, 2025. [Bush Dec., at ¶ 7]. According to Respondents, "before the instant Petition was filed," Petitioner "left Floyd County and was transferred to Stewart Detention Center ("SDC") where she is being detained[.]" [Doc. 12 at 7]. Stewart Detention Center is located in the Middle District of Georgia. Respondents also stated that "[o]n November 20, 2025, Petitioner's OREC was cancelled because she "failed to comply with the conditions of release." *Id*. (citing Bush Dec., ¶ 11, Exh. D).[2]

---

responses on December 15, 2025. [Docs. 21, 22]. In their responses, the parties agreed that Petitioner's asylum status "is not a meaningful basis for distinguishing her case from others." [Doc. 21 at 5]; *see also* [Doc. 22 at 3] (The asylum process is designed to offer protection to vulnerable individuals fleeing persecution. It is not intended to serve as a mechanism for formal entry or admission into the U.S., which involves different legal and procedural requirements."). Therefore, the Court finds that Petitioner's pending asylum application does not meaningfully distinguish her case from other similar cases for the purposes of the question before it.

[2] Respondents also state that because Petitioner "is inadmissible to the U.S. and, thus, is removable from the U.S. under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the U.S. without being admitted or paroled, she has been scheduled for a hearing before the Immigration Court in Lumpkin, Georgia on December 3, 2025." [*Id*.].

## II.    DISCUSSION

### a.  Venue

The Parties disagree on whether the Northern District of Georgia is the proper venue for this habeas petition. Petitioners state that this venue "is proper venue for the habeas petition because Petitioner was in the custody and control of the Atlanta Field Office Director, within this district, at the time she filed her habeas petition." [Doc. 18 at 4]. Respondents disagree and argue that the Petition was filed "several hours after Petitioner left Floyd County Jail and one minute after Petitioner left the ICE Atlanta Field Office." [Doc. 12 at 8–9]. Therefore, they contend that "the Northern District never acquired jurisdiction over the instant Petition." [*Id*. at 9]. But, as Respondents acknowledge, "Petitioner was in transit and was not booked into SDC until 7:30 p.m. . . . leaving the question of habeas jurisdiction in something of limbo." [*Id*.].

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person' who has custody over [the petitioner].'" *Rumsfield v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). This rule, along with § 2241(a)'s language that "district courts may issue the writ only 'within their respective jurisdictions'" makes true that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the

3

United States, he should name his warden as respondent and file the petition in the district of confinement." *Id*. at 447.

"When the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id*. at 441.

However, when these default rules prove unworkable, courts, such as the Fourth Circuit, have used the "unknown-custodian exception." *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *5 (4th Cir. July 1, 2025). "The unknown-custodian exception is critical because a detainee must always have an available forum for a habeas petition, even if the government doesn't disclose their location." *Id*. Therefore, when "the government moves a detainee from a district and their attorney cannot discover their location with reasonable inquiry, that attorney must be able to file a habeas petition in the detainees last-known location against their ultimate custodian." *Id*. Without this, Petitioners would be unable to seek redress in circumstances where their attorneys are unaware of their physical locations.

Here, Petitioner's last known location, at the time of the filing of her habeas petition, was the Northern District of Georgia.[3] In fact, as Petitioner's attorney points

---

[3] Respondents argue that because the habeas petition was filed on ECF at 4:54 PM then "when the Petition was filed, the Direct of the ICE Atlanta Field Office was no longer Petitioner's immediate custodian." [Doc. 12 at 9]. However, Respondents then later admit that Petitioner was released

out "at the time of filing her petition, Petitioner either was still physically located in the Atlanta ICE Field Office itself, located at 180 Ted Turner Drive, SW, Atlanta, GA, or was in the custody of the Atlanta ICE Field Office Director, Ladeon Francis, having control over ICE agents within the Atlanta region and all of Georgia, who were transporting Petitioner to SDC, which is located approximately two hours away. Even if she was booked out at 4:53 p.m., there is no way she could have boarded the bus to transport her (and dozens of other ICE detainees) in less than a minute. Either way, at the time of filing, Petitioner remained physically located within the Norther District of Georgia under the legal custody of Ladeon Francis, the ICE Field Office Director for Atlanta, and under the ultimate custodian of DHS Secretary Kristi Noem and this Court has clear jurisdiction over the petition notwithstanding her subsequent transfer to the Middle District of Georgia." [Doc. 18 at 9].

Considering those facts, the unknown-custodian exception is appropriate here because Petitioner's counsel could not have known where her client was at the time of filing her habeas petition. "The very nature of the writ demands that it be

---

from the Atlanta Field Office around 4:53 PM and "was in transit" for the next few hours. [Doc. 11 at 7]. Petitioner was not booked into Stewart Detention Center until 7:30 PM. [*Id*.]. Respondents seem to assert that this "jurisdictional limbo" should mean that Petitioner could not have filed her habeas petition anywhere during that transitional time and instead, potentially should have waited until 7:30 PM, at the time Petitioner arrived at Stewart Detention Center. As Petitioner shows in her briefing, her attorney did all she could to locate Petitioner. The Court finds that allowing Petitioner to file her habeas petition in this Court is both fair and logical.

administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and correct." *Harris v.* Nelson, 394 U.S. 286, 291 (1969). Accordingly, the Court finds that Petitioner's counsel properly filed the Petition in the Petitioner's last-known location or in the location that she could have best assumed Petitioner would be based on all information available to her. Allowing otherwise would mean that parties like Petitioner would be without the ability to file habeas petitions if the Government moved petitioners as quickly as possible. Therefore, the Northern District of Georgia is the proper venue.

### b.  Subject Matter Jurisdiction

#### i.  8 U.S.C. § 1252(b)(9)

First, Respondents argue that 8 U.S.C. § 1252(b)(9) prohibits this Court's review of Petitioner's Petition. That statute prevents judicial review, except of a final order, "of all questions of law or fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States[.]" *Id*. Respondents assert that that § 1252(b)(9) blocks this Court's review of Petitioner's Petition because it allegedly arises from an action taken to remove an alien from the country. [Doc. 12 at 11].

The Court rejects Respondent's position based on *Jennings v. Rodriguez*, 583 U.S. 281, 292–94 (2018). In *Jennings*, the Supreme Court held that § 1252(b)(9) did

not present a jurisdictional bar where "questions of law" regarding whether "certain statutory provisions require detention without a bond hearing" do not "arise from" the decision to remove an alien from the country as set forth in § 1252(b)(9). *Id*. There, the detainee was "not asking for review of an order of removal;" was "not challenging the decision to detain them in the first place or to seek removal;" and was "not even challenging any part of the process by which their removability will be determined." *Id*. at 294–95. The Court rejected the "expansive interpretation" of the statutory section that Respondents seem to seek the Court use today. *Id*.

The relief Petitioner seeks would allow the Government to detain her initially, but would require the Government to give her a bond hearing.[4] Petitioner seeks that her detention be changed to be pursuant to a statute that would entitle her to a bond hearing. She is not asking for a review of an order of removal, challenging a decision to detain her in the first place, or challenging part of the process by which her removability will be determined. Respondents' arguments fall short of convincing the Court that it should not follow Supreme Court precedent. The Court, like the Supreme Court in *Jennings*, rejects the Respondent's "expansive interpretation" and finds that § 1252(b)(9) does not prevent its consideration of Petitioner's claims.

---

[4] Petitioner also makes arguments against her detention related to her Fifth Amendment Due Process rights; however, the Court does not address these arguments in light of its ruling.

### ii. § 1252(g)

Second, Respondents assert that 8 U.S.C. § 1252(g) "strips" the Court of jurisdiction. Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause of claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any aliens under this chapter." Respondents argue that since Petitioner is currently detained under 8 U.S.C. § 1225(b)(2)(A), § 1252(g) bars this Court's jurisdiction. [Doc. 12 at 11–12].

The Court also rejects this argument based on Supreme Court precedent. In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999), the Supreme Court stated that § 1252(g) applies only to "three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" However, "1252(g) is not to be construed broadly as a 'zipper' clause applying to the full universe of deportation-related claims, but instead as applying narrowly to only the three 'discrete' governmental actions enumerated in that subsection." *Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 960 (11th Cir. 2015) (citing *Reno*, 525 U.S. at 472–73). "And although 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are

8

excluded from [a court's] review . . . . " *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (citations omitted).

Petitioner's claims here do not challenge the Attorney General's decision to commence removal proceedings, adjudicate her case, or execute a removal order. Rather, as stated, she challenges the legality of her detention without bond, which is not listed within section 1252(g). She does not challenge whether her removal is proper, the merits of his case, or any other related argument.

Respondents cite two Eleventh Circuit opinions they contend support their position that the Court lacks jurisdiction under § 1252(g). [Doc. 12 at 12]. First, Respondents cite *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013). In *Gupta*, the Eleventh Circuit stated "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings." *Id*. Next, Respondents cite *Alvarez v. U.S. Immigration and Customs Enforcement*, 818 F.3d 1194, 1203 (11th Cir. 2016), where the Eleventh Circuit stated that it could not review the decision to detain an alien pending removal. But, unlike the parties in those cases, Petitioner here does not challenge the validity of her underlying removal proceedings or even whether she could be detained, but rather her right to a bond hearing in the meantime. Both of those cases are inapplicable here. Petitioner is separately seeking asylum, but the issue before the Court is whether Petitioner can

9

be held without bond. Therefore, this provision also does not strip the Court of jurisdiction to consider Petitioner's claim.

### c. Statutory Authority to Detain Petitioner

As set forth above, the Parties disagree on which statute governs Petitioner's detention. Petitioner asserts that 8 U.S.C. § 1226(a) applies, while Respondents assert that Petitioner is rightfully detained pursuant to 8 U.S.C. § 1225(b)(2).[5]

Section 1225 governs noncitizen "applicants for admission" who are "present in the United States," but have "not been admitted." 8 U.S.C. § 1225(a)(1). Except for narrow circumstances, "detention under 8 U.S.C. § 1225(b)(2) is considered mandatory," and individuals detained under 8 U.S.C. § 1225(b)(2) are not entitled to a bond hearing.

Alternatively, § 1226 governs "aliens already in the country." *Jennings*, 583 U.S. at 289 (citation omitted). Those detained pursuant to § 1226 "may be arrested and detained pending a decision on whether the alien is to be removed from the United States," but the Attorney General "may release the alien" on bond or conditional parole, except in limited circumstances which do not apply here. Therefore, because of the difference in the two statutory schemes, if Petitioner is an

---

[5] The Court notes that throughout its analysis, it heavily relies on the sound reasoning of the Honorable Mark H. Cohen and the Honorable Clay D. Land in their consideration of similar issues. *Rojano Gonzalez v. Sterling et al.*, No. 1:25-cv-06080-MHC (N.D. Ga.); *J.A.M. v. Jason Streeval, et al.*, No. 4:25-cv-342-CDL (M.D. Ga.).

alien subject to § 1225, her detention would be mandatory. If, however, she is an alien subject to § 1226, she is at minimum entitled to a bond hearing.

Courts must begin statutory interpretation "with the words of the statutory provision." *In re 2 Monkey Trading, LLC*, 142 F.4th 1323, 1329–30 (11th Cir. 2025) (citations omitted). Additionally, courts "presume that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc).

Respondents rely on § 1225(b)(2)(A), which states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal proceedings. *Id*. The definition of "an applicant for admission" is found in § 1225(a)(1). That definition states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission." *Id*. Petitioner likely falls within the broad statutory definition of "an applicant for admission." However, the phrase "alien seeking admission" is not defined within the statute. Respondents argue that all aliens within the United States that have not been lawfully admitted fall within § 1225(b)(2)(A) and therefore must be detained without a bond hearing. The Board of Immigration Appeals has recently supported this argument. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

11

However, the Court finds that this interpretation overlooks the plain language of the phrase "seeking admission" found within § 1225(b)(2)(A).

Since the phrase "an alien seeking admission" is not defined within the statute, the Court must construe it based on its ordinary meaning. The word "seek" is a verb defined as "to go in search of" something. *See Seek*, Merriam-Webster, https://www.merriam-webster.com/dictionary/seek (defining seek as "to go in search of" "look for" among other similar definitions). This is an active verb that indicates a person is actively pursuing, striving, requesting, or searching for something or someone. Therefore, Congress's plain language indicates this section should apply to an alien who is attempting to gain lawful admission into the United States. This interpretation is further supported by the fact that "seeking admission" is a participle phrase which modifies the word "alien," a noun. A participle phrase is a verb that acts as an adjective. Therefore, "seeking admission" narrows the meaning of alien as used within the statute. This means "seeking admission" works to describe a specific type of alien: one who is actively looking for lawful admission into the United States. Therefore, based on a plain reading of the language, § 1225(b)(2)(A) applies to aliens in the United States who have not been admitted *and* who are currently attempting to obtain lawful admission to the United States. A person must fall within both definitions to be covered by the statute.

Petitioner was not "seeking admission" at the time she was apprehended. She was taking no affirmative step to be admitted into the country. Rather, she was apprehended years after her initial entry. Petitioner's attempts to gain asylum do not alter this analysis in any way. She is not seeking to be admitted permanently, but rather for the limited purpose of asylum only. Therefore, any detention of her requires a decision on bond edibility under § 1226(a). To hold otherwise would be inconsistent with the plain language of the statute and make § 1226(a) superfluous. *See also Rojano Gonzalez v. Sterling et al.*, No. 1:25-cv-06080-MHC (N.D. Ga.); *Jimenez v. Warden, FCI Atlanta et al.*, No. 1:25-cv-05650-SDG (N.D. Ga.); *Lima v. Warden et al.*, No. 1:25-cv-06304-ELR (N.D. Ga.) (all holding the same).

The Court's interpretation is also supported by the broader statutory context and the whole act rule. *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019) ("The whole-text-canon refers to the principle that a 'judicial interpreter [should] consider the entire text, in view of its structure and of physical and logical relation of its many parts,' when interpreting any particular part of the text.") (quoting Scalia, *supra*, at 167). The framework of § 1225 focuses on the admission of aliens once they arrive in the United States or when they actively seek admission after arrival. That provision also focuses on the "inspection" of aliens upon their arrival. This is consistent with the finding that the statute applies to aliens who are actively seeking admission to the United States, unlike Petitioner.

13

Section 1226(a) further supports this finding based on the statutory canon of *in pari materia*. "[S]tatutes relating to the same subject matter must be read *in pari materia*, thus allowing for legal harmony where possible." *Alabama Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1158 (11th Cir. 2014) (citation omitted); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 292 (1988) (stating that in statutory interpretation courts should look "to the particular statutory language at issue, as well as the language and design of the statute as a whole.") (citation omitted).

After reading § 1226, the Court finds that Congress contemplated that some aliens may be arrested but still be provided the opportunity for bond. Without that interpretation § 1226 becomes superfluous, which cannot be. *United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."). Section 1226 was meant to apply to aliens like Petitioner who is present in the United States but not seeking admission. While § 1225 was meant to apply to those both present in the United States and seeking lawful admission. These statutes together lead to a commonsense conclusion: alien seeking admission at the time of her arrival in the United States or later, Congress decided that her detention is mandatory during the time that a decision is reached on whether she is allowed entry. However, for aliens who are found to be in the country unlawfully and who are arrested, there is discretion. Namely, whether that person is entitled to bond.

14

In summary, the Court concludes that § 1226(a), not § 1225(b)(2), applies to Petitioner. Accordingly, based on the present record, Petitioner is not subject to mandatory detention. Instead, she is entitled to a bond hearing. Whether she is ultimately released on a bond will depend upon the discretion of the immigration officer and immigration judge as they apply the provisions of § 1226(a)(2) and the applicable regulations.

## III.   CONCLUSION

Accordingly, for the reasons explained above, the Court grants Petitioner's petition for writ of habeas corpus to the extent that the Court orders Respondents to provide Petitioner with a bond hearing to determine if she may be released on bond under § 1226(a)(2).

**IT IS SO ORDERED** this 16th day of December, 2025.

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE